**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FLATIRON HEALTH, INC.** | ) | |
| c/o its attorneys | ) | CASE NO: |
| 24870 Fairmount Blvd | ) | |
| Beachwood, Ohio 44122 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | Magistrate Judge: |
| v. | ) | |
| | ) | |
| **FLATIRONS DEVELOPMENT, LLC** | ) | |
| c/o its Statutory Agent | ) | **JURY DEMAND** |
| Michael Frederick | ) | |
| 1160 Berea Drive | ) | |
| Boulder, Colorado 80305 | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S COMPLAINT FOR MONETARY DAMAGES**
**AND INJUNCTIVE RELIEF**

**COMPLAINT**

Plaintiff Flatiron Health, Inc. ("Flatiron"), by and through counsel, brings this Complaint

against Defendant Flatirons Development, LLC ("FDLLC"), and states as follows:

**NATURE OF THE CASE**

1.      Flatiron brings this action for trademark infringement and unfair competition under

the Lanham Act, 15 U.S.C. § 1051 et seq., as well as related state law claims for trademark

infringement, unfair competition, and deceptive trade practices.

2.      Defendant has engaged in unauthorized conduct intended to trade on Flatiron's

substantial goodwill.

3.      Flatiron seeks monetary damages and permanent injunctive relief to prevent further

irreparable harm to its brand, reputation, and consumer goodwill.

4.     FDLLC adopted marks confusingly similar to Flatiron's federally registered trademarks, was twice refused registration by the USPTO on likelihood-of-confusion grounds, and rather than ceasing its infringing use continued marketing its services under those same marks.

5.     FDLLC's subsequent purported rebrand to "Swovo" is nominal at best:  FDLLC continues to identify itself as Flatirons Development across its website, LinkedIn presence, and domain, and continues to operate flatirons.com to this day.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338 because this cause of action is brought pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq.

7.     The Court has supplemental jurisdiction over Flatiron's state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.     This Court has personal jurisdiction over Defendant because Defendant has purposefully directed infringing and unlawful conduct toward Ohio, including by operating an interactive commercial website accessible in Ohio, expressly marketing and offering services to Ohio customers, affirmatively representing that it targets and services customers in Cleveland, Ohio, and deriving revenue from customers located in this District as a result of that targeting.

9.     Defendant's infringing use of the Flatiron Marks and the domain name flatirons.com has caused and continues to cause harm to Flatiron in Ohio, including consumer confusion, diversion of Ohio customers, and injury to Flatiron's goodwill among Ohio-based customers.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Flatiron's claims occurred in this District, including Defendant's express targeting of customers in Cleveland, Ohio, Defendant's solicitation of business in this District using the infringing FLATIRONS and FLATIRONS DEVELOPMENT marks, Defendant's use of the flatirons.com domain and the Flatiron Marks to divert Cleveland-area consumers, and the resulting confusion and harm suffered by Flatiron in this District.

11.     Defendant's forum-directed conduct was intentional and commercial in nature, and Flatiron's claims arise directly from Defendant's activities in this District, supporting personal jurisdiction and venue in this Court.

12.     Venue is also proper under 28 U.S.C. § 1391(b)(1) because Defendant is subject to personal jurisdiction in this District with respect to this action.

## THE PARTIES

13.     Plaintiff Flatiron Health, Inc. is a Delaware corporation with a primary place of business in New York, New York.

14.     Flatiron does business within this District and Division, throughout the United States, and internationally.  Flatiron has customers within this District and Division and actively advertises its services to potential customers within this District and Division.

15.     Upon information and belief, Defendant Flatirons Development, LLC is a Colorado limited liability company with a principal place of business in Boulder, Colorado.

## FLATIRON'S INTELLECTUAL PROPERTY
## AND ASSOCIATED GOODWILL

16.     Since its founding in 2012, Flatiron has grown into one of the most recognized and trusted health technology companies in the United States, employing thousands of professionals and partnering with leading cancer centers, hospitals, and research institutions nationwide.

17.     Flatiron has invested significant capital in promoting its products and services under the Flatiron name, and has been consistently recognized as an industry leader in advancing oncology care and medical research.

18.     Flatiron owns an extensive portfolio of federally registered trademarks, including the marks listed below.

19.     Flatiron is the owner of the following trademarks, among others, registered with the United States Patent and Trademark Office in relation to its services:

| TRADEMARK | REG. NO. | INTERNATIONAL CLASSES |
|---|---|---|
| FLATIRON | 4,408,549 | 035, 042 |
| flatiron | 5,449,942 | 035, 042 |
| FLATIRON HEALTH | 4,530,467 | 035, 042 |
| FLATIRON EXPLORE | 7,754,824 | 042 |
| FLATIRON SIGNAL | 7,164,654 | 035, 042 |
| FLATIRON MEASURE | 7,787,476 | 042 |

20.     The trademarks above, including Reg Nos. 4,408,549; 4,530,467; 5,449,942; 7,164,654; 7,754,824; 7,787,476 are collectively referred to herein as "the Flatiron Marks" or "Flatiron's Marks."  Copies of those registrations are attached hereto as EXHIBIT 1.

21.     These registrations are valid, subsisting, and in full force and effect.

22.     Several of the Flatiron Marks have achieved incontestable status under 15 U.S.C. § 1065, further confirming their strength and Flatiron's exclusive rights.

23.     The Flatiron Marks, individually and collectively, serve as a powerful source identifier and are widely recognized by consumers, healthcare providers, and industry professionals as denoting Flatiron's high-quality, innovative services.

24.     The Flatiron Marks are distinctive.

25.     Over the past decade, they have also acquired an extraordinary level of commercial strength through extensive and exclusive use, widespread media coverage, industry accolades, and significant advertising expenditures.

26.     As such, the Flatiron Marks are entitled to the highest level of protection under both federal and state trademark law.

27.     Flatiron holds the exclusive statutory right to use the Flatiron Marks in commerce throughout the United States in connection with its goods and services, and enjoys the presumption of nationwide priority and validity afforded by federal registration.

28.     Flatiron's Marks are valid and have been continuously used in commerce without abandonment.

## DEFENDANT'S INFRINGEMENT AND UNLAWFUL PRACTICES

29.     FDLLC, without authorization or permission from Flatiron, and long after Flatiron's first use in commerce of the Flatiron Marks, started to produce, market, advertise, offer for sale, and sell software services and consulting services in competition with Flatiron.

30.     On December 27, 2023, FDLLC filed a trademark application with the USPTO for "FLATIRONS".  A true and accurate copy of that application is attached hereto as EXHIBIT 2.

31.     The Trademark Examiner assigned to that application refused FDLLC's application for FLATIRONS, in part, because "of a likelihood of confusion with the marks in U.S. Registration Nos. … 4408549, 4530467 [pursuant to] Trademark Act Section 2(d), 15 U.S.C. §1052(d)."  A true and accurate copy of that refusal is attached as EXHIBIT 3.

32.     The refusal became final after FDLLC did not timely appeal.

33.     U.S. Registration Nos. 4408549 and 4530467 which justified the application's refusal comprise two of Flatiron's Marks.

34.     Nine months later, on September 17, 2024, FDLLC filed a second trademark application with the USPTO for "FLATIRONS DEVELOPMENT." A true and accurate copy of that application is attached hereto as EXHIBIT 4.

35.     Like its first application, the Trademark Examiner assigned to the subsequent FLATIRONS DEVELOPMENT application held that it was "refused because of a likelihood of confusion with the marks in U.S. Registration Nos. … 4408549, and 5449942. Trademark Act Section 2(d), 15 U.S.C. §1052(d)." A true and accurate copy of that refusal is attached as EXHIBIT 5.

36.     The refusal became final after FDLLC did not timely appeal.

37.     Again, U.S. Registration Nos. 4408549 and 5449942 justifying the application's refusal comprise two of Flatiron's Marks.

38.     Despite the USPTO informing FDLLC that FLATIRONS and FLATIRONS DEVELOPMENT are confusingly similar to the Flatiron Marks, FDLLC nevertheless adopted those marks in the marketing, advertising, and sale of its services.

39.     Those services are similar to, or are closely related to, the services Flatiron offers under the Flatiron Marks.

40.     Indeed, FDLLC touts its healthcare and healthtech services on its website, stating that "Flatirons Development is a healthcare software consultancy that helps businesses create HIPAA-compliant web and mobile apps":



https://swovo.com/services/healthcare-software-development-company-columbus-oh    (accessed April 5, 2026).  A true and correct copy of the webpage is attached as EXHIBIT 6.  *See also* the following description of FDLLC's services, advertised under its infringing use of its "Flatirons Development" brand:



*Id.*

41. The overlap between FDLLC's services and Flatiron's is not incidental. Flatiron's marks are specifically associated with oncology data infrastructure, clinical research platforms, and cancer care technology; services relied upon by hospitals, cancer centers, and healthcare institutions making high-stakes decisions about patient care technology.

42. FDLLC has deliberately positioned itself in the same healthcare software space, touting HIPAA compliance and healthcare software development as core offerings.

43. The consumers most likely to encounter both parties' services: hospital administrators, healthcare IT decision-makers, and clinical operations teams, for example, are precisely the buyers who know and rely on the Flatiron name in connection with oncology data and clinical research infrastructure.

44. Their familiarity with Flatiron's brand does not diminish the likelihood of confusion; it amplifies the harm when confusion occurs, as these buyers make high-stakes decisions about patient care technology based in part on brand trust and source identity.

45. Confusion among this audience is not merely a commercial inconvenience; it implicates decisions about clinical data infrastructure and patient care technology, making the harm to Flatiron's brand and goodwill particularly acute and irreparable.

46.     FDLLC's website and marketing materials expressly represent that FDLLC targets and services customers in Cleveland, Ohio, demonstrating FDLLC's deliberate exploitation of this District while using the infringing FLATIRONS and FLATIRONS DEVELOPMENT marks as source identifiers for its services, including by holding itself out as available to provide software-development services to customers in Cleveland, Ohio:



https://swovo.com/services/machine-learning-company-cleveland/ (accessed April 5, 2026). A true and correct copy of the webpage is attached as EXHIBIT 6.

47.     As of the filing of this Complaint, FDLLC had dozens of pages on its website that directly marketed its competing services to customers in Ohio under the Flatirons, Flatirons Development and even Flatiron marks. True and accurate copies of websites evidencing those examples are attached as EXHIBIT 7.

48.     FDLLC is not, nor has it ever been, affiliated with, sponsored, or licensed by Flatiron to use Flatiron's Marks or any marks confusingly similar to them.

49.     Confusion is not only theoretical; it is actually occurring. FDLLC's own employee is quoted on FDLLC's website referring to FDLLC as "Flatiron," a facsimile of Flatiron's Marks. The same quotation previously appeared on FDLLC's website at flatirons.com and continues to appear on FDLLC's current website at swovo.com, demonstrating FDLLC's continued use of Flatiron-confusingly similar branding and continued use of "Flatirons Development" as a source identifier notwithstanding its purported rebrand:



Flatiron's work optimized site design and flow. The creative lead at Flatirons demonstrated exceptional UX know-how, integrating usability and design to deliver a powerful product. The client came out of the engagement with a wider understanding of the most important platform features.

**HEIDI HILDEBRANDT**
Director of Product

https://swovo.com/services/machine-learning-company-cleveland/  (red  emphasis  added) (accessed April 5, 2026).  A true and correct copy of the webpage is attached as EXHIBIT 6 at p. 4. It also appears on numerous other websites of FDLLC.  *See, e.g.*, EXHIBIT 7, pp. 6, 20, 35, 49, 64, 79.

50.     Such misidentification constitutes evidence of actual confusion and willfulness, or at minimum, evidence of FDLLC's own confusion.

51.　FDLLC's current website displays "Flatirons Development" in a manner that identifies the source of FDLLC's services, including on service pages directed to Ohio customers, constituting trademark use in commerce, including through Cleveland-specific service pages, calls-to-action, and lead-capture mechanisms.

52.　FDLLC's express targeting of Cleveland and other Ohio customers has caused and continues to cause confusion among consumers in this District, including consumers who encounter FDLLC's services through FDLLC's use of the FLATIRONS and FLATIRONS DEVELOPMENT marks and through FDLLC's use of the flatirons.com domain.

53.　FDLLC's Cleveland-targeted marketing and solicitation occur in interstate commerce, including through online advertising and web-based lead generation directed to Ohio customers.

54.　FDLLC's use of Flatiron's Marks and marks confusingly similar to them creates the false impression that FDLLC's services originate from Flatiron, or that Flatiron is somehow connected or associated with FDLLC's services.

55.　FDLLC has never contacted Flatiron for permission to use or license the Flatiron Marks.

56.　Flatiron has written to FDLLC to demand that FDLLC immediately cease all use of the Flatiron Marks and confusingly similar marks, including FLATIRONS and FLATIRONS DEVELOPMENT.

57.　Nonetheless, FDLLC has failed and refused to cease its unlawful actions.

58.　FDLLC's infringing services directly compete with Flatiron's offerings, and FDLLC has derived commercial benefit from consumer confusion attributable to the Flatiron Marks, including by capturing leads and clients who sought or were misled into engaging FDLLC.

## FDLLC'S PATTERN OF WILLFUL INFRINGEMENT

59.     The USPTO's repeated refusals, and FDLLC's response to them, reveal a calculated pattern of infringement rather than inadvertent use.

60.     On December 27, 2023, FDLLC filed its first application to register FLATIRONS. The USPTO refused that application, finding a likelihood of confusion with Flatiron's federally registered marks.

61.     FDLLC did not appeal that determination.

62.     Instead, it allowed the refusal to become final; an uncontested finding by USPTO that FLATIRONS is confusingly similar to the Flatiron Marks.

63.     Rather than discontinuing its use of the infringing mark, FDLLC waited nine months and then, on September 17, 2024, filed a second trademark application, this time for FLATIRONS DEVELOPMENT.

64.     The filing of a second application after an uncontested refusal is not the conduct of a party acting in good faith.  It is the conduct of a party that understood it could not lawfully register its marks, yet chose to press forward anyway, slightly modifying its application in an attempt to circumvent the same registrations that had already blocked its first attempt.

65.     The USPTO refused the second application on the same grounds, notably likelihood of confusion with the Flatiron Marks.

66.     Again, FDLLC did not appeal and allowed the refusal to become final.

67.     By allowing both refusals to go final without challenge, FDLLC effectively conceded what the USPTO had twice found:  that FLATIRONS and FLATIRONS DEVELOPMENT are confusingly similar to Flatiron's registered marks.

68. Despite those uncontested findings, FDLLC continued (and continues today) to use both marks in commerce.

69. FDLLC's decision to press forward with infringing use after two final, uncontested USPTO refusals is not a mistake. It is a choice, and it is willful.

## DEFENDANT'S PURPORTED REBRAND DOES NOT CURE ITS INFRINGEMENT

70. After receiving notice of Flatiron's rights and the USPTO's repeated refusals, FDLLC began marketing some of its services under the name "Swovo."

71. FDLLC nevertheless continues to operate under the legal name Flatirons Development, LLC and continues to market its services under the infringing FLATIRONS DEVELOPMENT brand, and continues to use the flatirons.com domain name.

72. FDLLC automatically directed flatirons.com users to its other website, swovo.com.

73. FDLLC's use of flatirons.com as a redirect was designed to capture Internet users seeking Flatiron, including users who mistype or assume affiliation with Flatiron, and to funnel that traffic to FDLLC's competing services.

74. FDLLC's redirecting use of flatirons.com constituted trademark infringement and cybersquatting, and demonstrates FDLLC's intent to continue profiting from confusion associated with the Flatiron Marks notwithstanding its nominal "rebranding."

75. On or around March 12, 2026, after receiving Flatiron's written demands to cease, FDLLC altered flatirons.com to display a blank or placeholder page stating that "Nothing Here. There's nothing at this address."

76. FDLLC has not, however, transferred the domain to Flatiron, released it, or taken any steps to relinquish control. FDLLC retains ownership and control of flatirons.com to this day.

77. Under these circumstances, FDLLC's continued ownership of flatirons.com serves no purpose other than to retain a resource whose value derives entirely from its confusing similarity to the Flatiron Marks, whether to divert future traffic, to sell the domain for value, or simply to deny Flatiron access to a domain to which it has superior rights.

78. Each of these constitutes bad-faith intent to profit.

79. Despite advertising some of its services under Swovo, FDLLC has continued to market its services under the FLATIRONS and FLATIRONS DEVELOPMENT marks.

80. FDLLC's conduct reflects a scheme in which FDLLC uses Flatiron's marks to attract consumers and then substitutes its own competing services.

81. One example of FDLLC's continued use of Flatirons Development despite the Swovo "rebrand" is as follows:



https://swovo.com/services/machine-learning-company-cleveland/ (accessed March 6, 2026).  A true and correct copy of the webpage as accessed on April 5, 2026 is attached as EXHIBIT 6.

82.     FDLLC has used and continues to use "Flatirons Development" not merely as a corporate identifier, but as a trademark and service mark to identify the source of its services, including in prominent, source-identifying website headings, marketing copy, client-facing materials, and domain-based branding.

83.     FDLLC continues to display and use "Flatirons Development" in connection with its services (including in website content, source-identifying materials, and marketing), thereby continuing trademark use despite the Swovo "rebrand."

84.     FDLLC's continued use of FLATIRONS DEVELOPMENT on its current website and continued exploitation of flatirons.com demonstrate deliberate intent to confuse consumers and to profit from the goodwill and recognition associated with the Flatiron Marks (including FDLLC's prior use as a commercial redirect and continued retention of the domain).

85.     Upon information and belief, FDLLC continues to use flatirons.com for operational purposes beyond mere domain retention, including back-end infrastructure, API endpoints, and internal marketing directed to its existing and prospective customers.

86.     FDLLC has also maintained an active LinkedIn company page under the "Flatirons Development" name, which as of the filing of this Complaint had amassed nearly 8,000 followers. A true and accurate copy of that LinkedIn page is attached hereto as EXHIBIT 8.

87.     The page identifies FDLLC as "Flatirons Development," describes its services, lists its business locations, and displays recent posts (including active job postings and promotional content) published under the FLATIRONS DEVELOPMENT name.

88.     FDLLC has taken no steps to rename, close, or redirect this page notwithstanding its purported rebrand to "Swovo."

89.     The continued maintenance of a nearly 8,000-follower commercial LinkedIn presence under the FLATIRONS DEVELOPMENT name is inconsistent with a genuine rebrand.

90.     It constitutes ongoing trademark use of FLATIRONS DEVELOPMENT in commerce, for recruiting, business development, and public-facing marketing, and further demonstrates that FDLLC's "Swovo" rebrand is nominal at best and pretextual at worst.

91.     FDLLC seeks to confuse the public into believing that FDLLC is licensed, approved, sponsored, or otherwise affiliated with Flatiron.

92.     Flatiron has no control over the quality of the goods and services offered by FDLLC.

93.     FDLLC knowingly, intentionally, willfully, and maliciously adopted the FLATIRONS and FLATIRONS DEVELOPMENT marks for producing, marketing, advertising, and selling its services.

94.     FDLLC's actions are willful and reflect an intent to confuse consumers and profit from the goodwill and recognition associated with the Flatiron Marks.

### COUNT I
### INFRINGEMENT UNDER 15 U.S.C. § 1114

95.     Flatiron repeats and realleges each and every prior allegation as if fully set forth herein.

96.     Flatiron has the exclusive right to use the Flatiron Marks.

97.     FDLLC's use of FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT is likely to cause confusion, mistake, or deception as to the source.

98.     The actions of FDLLC constitute trademark infringement in violation of 15 U.S.C. § 1114.

99.     FDLLC's infringement is willful.  FDLLC received not one but two final USPTO refusals finding its marks confusingly similar to the Flatiron Marks.  It did not appeal either refusal, and it did not cease its infringing use.  Instead, FDLLC continued to use FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT in commerce with full knowledge of Flatiron's rights and the USPTO's findings.  This conduct warrants an award of enhanced damages and attorneys' fees under 15 U.S.C. § 1117.

100.     FDLLC's maintenance of an active, nearly 8,000-follower LinkedIn company page under the FLATIRONS DEVELOPMENT name, even after its purported rebrand, further confirms that FDLLC's infringement is knowing, willful, and ongoing.

101.     The actions of FDLLC, if not enjoined, will continue.

102.     Flatiron has suffered and continues to suffer damages.

103.     Pursuant to 15 U.S.C. § 1117, Flatiron is entitled to recover damages, profits, and the costs of this action.

**COUNT II**
**UNFAIR COMPETITION AND**
**FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

104.     Flatiron repeats and realleges each and every prior allegation as if fully set forth herein.

105.     Flatiron has sold its services under the Flatiron Marks.

106.     Flatiron has built a large and valuable business in its use of the Flatiron Marks.

107.     As a result of Flatiron's long, widespread, continuous, and exclusive use of the Flatiron Marks, the marks have developed distinctiveness and secondary meaning.

108. FDLLC has used, and is continuing to use, FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT in interstate commerce in connection with services similar to those of Flatiron.

109. FDLLC adopted FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT having full knowledge of Flatiron's prior rights.

110. FDLLC continues to use FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT having full knowledge of Flatiron's prior rights.

111. Through its unauthorized use of FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT, FDLLC has caused, and continues to cause, a likelihood of confusion with Flatiron and/or the Flatiron Marks.

112. FDLLC's infringement is willful. FDLLC received not one but two final USPTO refusals finding its marks confusingly similar to the Flatiron Marks. It did not appeal either refusal, and it did not cease its infringing use. Instead, FDLLC continued to use FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT in commerce with full knowledge of Flatiron's rights and the USPTO's findings. This conduct warrants an award of enhanced damages and attorneys' fees under 15 U.S.C. § 1117.

113. FDLLC's maintenance of an active, nearly 8,000-follower LinkedIn company page under the FLATIRONS DEVELOPMENT name, even after its purported rebrand, further confirms that FDLLC's infringement is knowing, willful, and ongoing.

114. As a direct and proximate result of FDLLC's unlawful acts, Flatiron has sustained and will continue to sustain damages unless FDLLC is enjoined by this Court.

**COUNT III**
**CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)**

115. Flatiron repeats and realleges each and every prior allegation as if fully set forth herein.

116. FDLLC registered and continues to use the domain name flatirons.com with a bad-faith intent to profit from Flatiron's Mark.

117. The domain name flatirons.com is identical to or, at minimum, confusingly similar to Flatiron's distinctive and famous federally registered Flatiron Marks.

118. FDLLC redirected traffic from flatirons.com to its current commercial website to divert Internet users seeking Flatiron and to capture customers for FDLLC's competing services, thereby capitalizing on Flatiron's goodwill and brand recognition for FDLLC's own financial gain.

119. FDLLC has knowingly maintained and exploited the domain despite repeated notice of Flatiron's rights, including final USPTO refusals and written demands to cease use.

120. FDLLC has no trademark or other intellectual property rights in the domain name flatirons.com, and, particularly after notice of Flatiron's rights and FDLLC's "rebrand," FDLLC's continued control of the domain evidences bad-faith intent to profit from Flatiron's marks.

121. FDLLC's conversion of flatirons.com to a blank placeholder page, rather than transferring the domain to Flatiron or surrendering it, further evidences bad-faith intent.

122. Retaining a domain with no legitimate use, particularly after notice of another's superior rights, constitutes bad-faith conduct under the ACPA independent of whether the domain is actively used to divert traffic.

123.    FDLLC's retention here is particularly egregious given that it occurred after two uncontested USPTO refusals, after written demands from Flatiron, and after FDLLC's own purported abandonment of the FLATIRONS name in favor of Swovo.

124.    As a direct and proximate result of FDLLC's unlawful acts, Flatiron has suffered and will continue to suffer monetary damages, including loss of goodwill, and irreparable harm for which there is no adequate remedy at law, and Flatiron is entitled to injunctive relief and statutory damages under 15 U.S.C. § 1117(d).

### COUNT IV
### COMMON LAW TRADEMARK INFRINGEMENT
### AND UNFAIR COMPETITION

125.    Flatiron repeats and realleges each and every prior allegation as if fully set forth herein.

126.    This Count arises under an action for damages and injunctive relief pursuant to the acts of trademark infringement and unfair competition under Ohio law.

127.    Flatiron has sold and continues to sell its services under the Flatiron Marks.

128.    Flatiron has built a large and valuable business in its use of the Flatiron Marks.

129.    As a result of Flatiron's long, widespread, continuous, and exclusive use of the Flatiron Marks, the marks have developed distinctiveness and secondary meaning.

130.    FDLLC has used, and is continuing to use, FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT in interstate commerce.

131.    Upon information and belief, FDLLC adopted the FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT having full knowledge of Flatiron's prior rights.

132.    FDLLC continues to use FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT, having full knowledge of Flatiron's prior rights.

133. Through its unauthorized use of FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT, FDLLC has caused, and continues to cause, a likelihood of confusion with Flatiron and/or the Flatiron Marks.

134. As a direct and proximate result of FDLLC's unlawful acts, Flatiron has sustained, and will continue to sustain damages unless FDLLC is enjoined by this Court.

## COUNT V
## DECEPTIVE TRADE PRACTICES
## O.R.C. § 4165

135. Flatiron repeats and realleges each and every prior allegation as if fully set forth herein.

136. FDLLC has violated the Ohio Deceptive Trade Practices Act in the manner described above, and by

   a. passing off goods or services as those of another;

   b. causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; and

   c. causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

137. FDLLC knowingly and intentionally violated the ODTPA in the above manner by using Flatiron's trademarks even though it knew of Flatiron's prior and longstanding rights.

138. FDLLC knowingly disregarded Flatiron's demands to cease infringement, demonstrating bad faith.

139.    FDLLC's violations of the ODTPA were knowing and intentional. The USPTO twice refused FDLLC's trademark applications on likelihood-of-confusion grounds, and FDLLC allowed both refusals to become final without appeal. FDLLC's decision to continue marketing its services in Ohio under the infringing marks (notwithstanding those uncontested findings and Flatiron's written demands to cease) constitutes the kind of willful bad faith that warrants attorneys' fees under O.R.C. § 4165.03.

140.    Flatiron has suffered monetary damages as a direct result of FDLLC's actions described above.

141.    In addition to recovering monetary damages, Flatiron is entitled to injunctive relief preventing FDLLC from using Flatiron's trademarks, or any marks substantially similar to Flatiron's trademarks in accordance with O.R.C. § 4165.03.

142.    In addition to monetary damages and injunctive relief, Flatiron is entitled to recover its reasonable attorneys' fees in prosecuting this action in accordance with O.R.C. § 4165.03(B).

## PRAYER FOR RELIEF

WHEREFORE, Flatiron respectfully requests judgment against FDLLC as follows:

### Preliminary and Permanent Injunctive Relief

A.  Enjoining FDLLC from using the Flatiron Marks, FLATIRON, FLATIRONS, and FLATIRONS DEVELOPMENT, or any confusingly similar mark in the advertisement, promotion or sale of its services; and

B.  Enjoining FDLLC from using flatirons.com in any manner, including through redirects, forwarding, DNS settings, or registrar/host controls, pending transfer to Flatiron.

C.  Enjoining FDLLC from engaging in any other acts of unfair competition, false advertising, or deceptive trade practices in violation of federal or Ohio law.

D.   An order requiring the transfer of flatirons.com to Flatiron.

## Monetary Relief

E.   Awarding Flatiron all damages it has sustained as a result of FDLLC's unlawful conduct, including but not limited to statutory damages, lost profits, loss of goodwill, and damage to its reputation;

F.   Ordering FDLLC to disgorge and account for all profits wrongfully obtained through its infringement, false advertising, unfair competition, and deceptive trade practices pursuant to 15 U.S.C. § 1117 and Ohio Rev. Code § 4165.03; and

G.   Awarding treble damages for FDLLC's willful and intentional violations of the Lanham Act, the Ohio Deceptive Trade Practices Act, and Ohio common law.

## Attorneys' Fees and Costs

H.   Awarding Flatiron its reasonable attorneys' fees, expenses, and costs of suit pursuant to 15 U.S.C. § 1117, Ohio Rev. Code § 4165.03(B), and the Court's equitable powers, due to FDLLC's willful and bad-faith misconduct.

## Equitable Relief

I.   Ordering FDLLC to provide Flatiron with a full and verified accounting of all revenues, profits, and benefits derived from its false advertising and unfair competition; and

J.   Awarding pre-judgment and post-judgment interest as permitted by law.

## Other Relief

K.   Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Flatiron demands a trial by jury as to all issues so triable.

Respectfully submitted,

Page **23** of **24**

/s/ Joshua B. Fuchs
Joshua B. Fuchs (0087066)
Suzann R. Moskowitz (0078380)
THE MOSKOWITZ FIRM
24870 Fairmount Blvd.
Beachwood, Ohio 44122
216-505-7500 [phone and fax]
josh@themoskowitzfirm.com
suzann@themoskowitzfirm.com
*Attorneys for Plaintiff*